UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STUART GREGOIRE, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>    *Defendant* ) | Civil No. 09-246-B-W |

### REPORT AND RECOMMENDED DECISION[1]

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal, the plaintiff contends that the residual functional capacity adopted by the administrative law judge was not supported by substantial evidence, that the administrative law judge was required to develop the record further, that the administrative law judge committed error requiring remand by rejecting the opinion of a treating physician and refusing to allow the plaintiff's attorney time to seek additional evidence from that physician, that the administrative law judge failed to obtain necessary information at Step 4 of the sequential review process and to comply with Social Security Ruling 00-4p, and that the administrative law judge should have found that the plaintiff's work during 2007 and 2008 was trial work.  I recommend that the court vacate the commissioner's decision in part.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on April 2, 2010, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

In accordance with the commissioner's sequential evaluative process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had engaged in substantial gainful activity after July 7, 2006, the alleged date of onset of his disability, Finding 2, Record at 12; that he suffered from bipolar disorder, asthma, and obesity, impairments that were severe but which, considered alone or together, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 240, Subpart P (the "Listings"), Findings 3-4, *id*. at 12-13; that the plaintiff had the residual functional capacity to perform medium work except that he could not perform work that involved more than occasional public contact or dealing with children or mentally-handicapped individuals on a one-to-one basis, or caused concentrated exposure to extreme could or respiratory irritants, while he could understand, remember, and execute complex instructions for two hours at a time in an eight-hour work day and five-day work week, as well as interact appropriately with co-workers and supervisors, Finding 5, *id*. at 13-14; that he was capable of performing his past relevant work as a palletizer and fence-making machine operator, Finding 6, *id*. at 17; and that the plaintiff had, therefore, not been under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, Finding 7, *id*.  The Decision Review Board affirmed the decision, *id*. at 1-4, making it the final determination of the commissioner.  20 C.F.R. § 405.420.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The appeal implicates both Step 1 and Step 4 of the sequential evaluation process. At Step 1, the plaintiff bears the burden of proving that he did not engage in substantial gainful activity ("SGA") during the period of alleged disability. *Bell v. Commissioner of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996); *see also Field v. Chater*, 920 F. Supp. 240, 241 (D. Me. 1995), *called into doubt on other grounds*, *Seavey v. Barnhart*, 275 F.3d 1 (1st Cir. 2001). Work is considered "substantial" if it "involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572(b), 416.972(b). If a claimant is able to work at SGA level, the commissioner will find that he is not disabled. 20 C.F.R. §§ 404.1572, 416.972.

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's residual functional capacity and the physical and mental demands of past work and determine whether the plaintiff's residual functional capacity would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

**Discussion**

*1. Substantial Gainful Activity*

The administrative law judge made the following findings about the issue of substantial gainful activity:

> The claimant worked as a cook at a fast food restaurant form September 2007 to mid-May 2008. The claimant's earnings record shows that the claimant received $2,982.00 in wages in 2007, all of which was paid in the fourth quarter of that year. The claimant therefore had average monthly earnings of $944.00 for October through December 2007. He was paid $2,855 in the first quarter of 2008, which yields an average of $951.00 per month. He was paid $1,827.00 in the second quarter. As he worked approximately one and a half months in that quarter, his average monthly earnings were approximately $1,200.00.
>
> The monthly wage amount indicative of substantial gainful activity was $900.00 for the year 2007, and $940.00 for 2008. The claimant earned at least these amounts for the seven month period from October 2007 through April 2008. The claimant's representative argued that the work activity after the alleged onset date [of July 7, 2006] should be viewed as a trial work period (20 CFR 404.15[74]). However, as the medical evidence does not support a finding that the claimant has been disabled for at least 12 consecutive months since his alleged onset date, he is not entitled to a trial work period. His ability to engage in substantial gainful activity is further evidence that he is not disabled.

Record at 12.

The plaintiff contends that "[t]he point of this finding regarding SGA is unclear." Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 14) at 19. To the contrary, the point is quite clear. If the plaintiff engaged in substantial gainful activity through April 2008, he cannot collect benefits for the period between his alleged onset date and April 2008. This is a Step 1 finding, and thus the first issue to be considered on appeal, rather than the last issue, as the plaintiff addressed it. Itemized Statement at 19-20. He asserts that the administrative law judge's conclusion that his work in 2007 and 2008 was not a trial work period

is "erroneous," apparently because the administrative law judge did not also expressly find that the plaintiff was not disabled for 12 consecutive months between the alleged onset date, July 7, 2006, and September 2007, when he began the work at issue. *Id.*

Of course, it is the plaintiff's burden to prove that he was disabled for 12 consecutive months during that period, and he fails even to discuss in his itemized statement whether the record contains such evidence and, if so, where it may be found. *See Petrucci v. Barnhart*, No. Civ. A.01-10682-DPW, 2003 WL 21715851 (D. Mass. July 23, 2003), at *5 ("It is important to emphasize that because the burden is on the claimant to establish that he did not engage in SGA for purposes of step one in the five step inquiry, the claimant bears the burden of rebutting the presumption of SGA based on income.")  An argument so undeveloped may only be considered waived.  Accordingly, the commissioner's Step 1 decision should be affirmed, and the plaintiff may not recover benefits for a period beginning before April 2008.  *Whitehead v. Secretary of Health & Human Servs.*, 886 F.2d 331 (table), 1989 WL 111585 (6th Cir. Sept. 27, 1989), at *2 (finding of SGA at Step 1 not dispositive for period where claimant had not worked after end of SGA and up to date of decision).

If the plaintiff meant to rely for this SGA issue on his discussion of the medical evidence in connection with a different issue, whether the residual functional capacity found was supported by substantial evidence, Itemized Statement at 3-4, that evidence does not establish the necessary 12-month period of disability between the alleged onset date, July 7, 2006, and the beginning of the period of work in September 2007.  Assuming *arguendo* that the plaintiff may "piggyback" the reviews completed by different state-agency psychologists at different times as

5

he does in his itemized statement,[2] he can only show the existence of a severe impairment, not necessarily a disability, and then only through March 2006 at the latest.

### 2. Residual Functional Capacity

The plaintiff contends that the administrative law judge failed "to base his [residual functional capacity] on any positive medical evidence." *Id*. at 3.  This is so, he asserts, because the state-agency reviews find a severe impairment that ended, at the latest, at "the end of March, 2006[,]" after which yet another state-agency psychologist reviewer found "no severe mental impairment at all" as of August 23, 2007. *Id*. at 4.[3]  He states that the administrative law judge "inexplicably failed to either adopt the views of any of the mental health experts in the record, seek further evidence or allow the medical advisor who was already present to testify on the mental health issues." *Id*.  He goes on to conclude that the administrative law judge "was obligated, given this record, to either adopt the existing RFC from Mr. Smith[4] or develop the record further to obtain a medical assessment of the limitations flowing from Mr. Smith's mental condition once he rejected Dr. Knox's view that it was not severe." *Id*. at 5.  That statement is erroneous as a matter of law and misconstrues the record.

---

[2] The plaintiff notes that a state-agency psychologist reviewer in May 2004 found him to be severely impaired by an affective disorder, but stated that his condition would improve within a period of fewer than 12 months, and a different state-agency psychologist reviewer in June 2005 found that "[his] condition was still severe . . . [but he] would improve before April 1, 2006." Itemized Statement at 3.  The two reports, he asserts, "demonstrate a disabling condition from February 23, 2004 to at least June 16, 2005, but projected to end somewhere between June, 2005 and the end of March, 2006." *Id*. at 3-4.  A severe impairment, of course, is not the same thing as a disability under the Social Security Act.
[3] Given the finding with respect to substantial gainful activity, only analyses of the plaintiff's alleged impairments as they existed after April 2008 would be relevant in any event.
[4] What the plaintiff apparently characterizes as an "actual mental RFC . . . from a treating physician's assistant, Zachary Smith, dated March 6, 2008," Itemized Statement at 4, hardly qualifies as such.  On a two-page form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," which directs the medical source to check any of the following 20 "work-related quality[ies]" that is "markedly limited or effectively precluded by this patient's symptoms," Smith placed a check next to only "[t]he ability to accept instructions and respond appropriately to criticism from supervisors."  Record at 531-32.  The space headed "Please provide a diagnosis and a brief indication of what medical or clinical findings support this assessment:" and the entire remainder of the form were left blank.  *Id*.

6

An administrative law judge is not required to adopt the conclusion of any particular treating, examining, or reviewing medical professional, with the exception of the undisputed opinion of a treating professional under circumstances not present in this case. In addition, an administrative law judge may fashion a conclusion as to a claimant's residual functional capacity from more than one source of medical evidence in the record, so long as he or she states the reasons for doing so. An added factor in this case is that Mr. Smith is a physician's assistant, Record at 534, whose opinion may not be used to support a finding of the existence of an impairment, but only to support findings as to the severity of that impairment. 20 C.F.R. §§ 404.1513(a) & (d)(1), 416.913(a) & (d)(1). And, more important, Mr. Smith's records are not the only medical evidence of the plaintiff's condition at the relevant time in the record; the administrative law judge cited those other records specifically.

Thus, there is an extended discussion of the reasons why the administrative law judge found the plaintiff's mental impairment to be severe, acknowledging both the most recent state-agency review finding that it was not, and the opinion of a treating physician, Dr. Margaret Jenner, that the plaintiff was totally disabled by his mental impairment. Record at 14-17, 544. Contrary to the plaintiff's contention, Itemized Statement at 4, the administrative law judge did not "fail[] to either adopt the view of any of the mental health experts in the record, seek further evidence or allow the medical advisor who was already present to testify on the mental health issues." He came to a conclusion based on all of the mental health evidence in the record, which he was allowed and indeed required to do, so long as he was not drawing a medical conclusion based on raw medical evidence. He did not do so in this case. As I have already noted, he was not required to adopt the view of any single mental health "expert." Nor was he required under the circumstances of this case to seek further evidence. An administrative law judge is never

7

required to consult a medical expert or "allow" him or her to testify. *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.21 1, 5 (1st Cir. 1987) (whether to consult medical advisor at hearing is matter solely within administrative law judge's discretion).

In order to be entitled to remand on the basis of an administrative law judge's alleged failure further to develop the evidence beyond that already in the record, particularly where, as here, the claimant was represented at the hearing, Record at 22, the plaintiff must show that, had the administrative law judge done so, he could and would have adduced evidence that might have altered the result. *See, e.g., Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). The First Circuit established the parameters of this issue over 20 years ago:

> In most instances, where appellant himself fails to establish a sufficient claim of disability, the [commissioner] need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the [commissioner] has recognized that []he has certain responsibilities with regard to the development of evidence and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled -- as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

*Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991) (citation and internal quotation marks omitted).

The plaintiff emphasizes that the attorney who represented him at the hearing was not "allow[ed] . . . to make a further attempt to seek an RFC from the treating psychiatrist[,]" Itemized Statement at 5, in an apparent attempt to establish the existence of gaps in the necessary medical evidence and the power of the administrative law judge to fill those gaps by allowing the

attorney to obtain a further report from Dr. Jenner, for whom the plaintiff was a "relatively newer patient," Record at 52.  On this point, the administrative law judge wrote the following:

> At the hearing, the claimant's representative requested that the record remain open to allow her to pursue an assessment of the claimant's ability to perform mental-related work activities from the claimant's treating psychiatrist, Margaret Jenner, D.O. (Dr. Jenner).  The undersigned denied this request.  Claimant's representative is very experienced in Social Security disability hearings.  She knew that the claimant's mental condition was the primary issue in this case.  Indeed, she provided an opinion regarding the claimant's work-related mental functioning from the claimant's treating physician's assistant, Zachary Smith, P.A.C. (Mr. Smith) (Exhibit 17F).  The claimant's representative had more than adequate time before the hearing to request such a statement from Dr. Jenner.  The claimant's representative apparently did not even contemplate obtaining that information until the hearing.  Furthermore, even if the record were to be left open and Dr. Jenner were to submit an assessment which expressed her opinion that the claimant cannot work, such opinion would be accorded very little weight as it could not overcome the preponderance of evidence which clearly shows that the claimant is not disabled from all work.

*Id*. at 9-10.  This decision, it appears to me, was within the scope of the administrative law judge's discretion.  Counsel for the plaintiff was unable at oral argument to cite any regulatory or case law authority for his position on this issue.  The plaintiff seeks to incorporate into the record the facts that the individual who represented him at the hearing did seek such a statement from Dr. Jenner, who did not respond.  Itemized Statement at 8-9.  This is information that should have been presented to the administrative law judge at the time of the hearing; it is not appropriate to attempt to supplement the record before the court in this manner.  In addition, the fact that Dr. Jenner did not respond to two requests for a completed form before the hearing suggests rather strongly that she would not be responsive in a timely manner, if at all, after the hearing.  The plaintiff has not presented any reason for believing otherwise.

*3. Schizoaffective disorder*

The plaintiff next faults the administrative law judge for an alleged "fail[ure] to even consider claimant's schizo[a]ffective disorder at Step 2 (and subsequent stages) of the sequential evaluation process." *Id*. at 7. This argument is based on the entry in the plaintiff's medical record, signed by Dr. Jenner, that he was "not employable due to schizo[a]ffective disorder." *Id.* at 6 (emphasis deleted). That entry appears at page 544 of the record.

An earlier page of Dr. Jenner's records gives her diagnosis of the plaintiff's illness as "schizoaffective disorder, bipolar type." Record at 541. This, however, appears to be a separate psychiatric impairment from a bipolar disorder, from which the administrative law judge found the plaintiff to be suffering. *Id.* at 12. The plaintiff cites the *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed.) ("DSM-IV-TR") of the American Psychiatric Association to that effect. Itemized Statement at 7. The administrative law judge noted this diagnosis by Dr. Jenner, but apparently dismissed it as "contradicted by the overall evidence," including Dr. Jenner's earlier report that the plaintiff "demonstrated good self-esteem, enjoyed activities, appeared cognitively intact, was well-organized, and a good historian." Record at 16. There is no indication of any authority for the conclusion that these observations contradict the diagnosis. In this instance, it appears that the administrative law judge was making medical judgments that he was not qualified to make, interpreting raw medical evidence. The parties' references to the administrative record do not assure me that the plaintiff's schizoaffective disorder could have had no more than an incidental or minimal effect on his ability to perform work-related activities, and this question must be addressed at Step 2 of the sequential evaluation process.[5]

---

[5] At Step 2, although a claimant bears the burden of proof, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight

At oral argument, counsel for the commissioner argued that any error in dealing with the schizoaffective disorder at Step 2 was harmless, because the plaintiff did not demonstrate how that error would necessarily affect the outcome of the case, citing *Ahearn v. Astrue*, No. 06-94-B-W, 2007 WL 951562 (D. Me. Mar. 27, 2007). It is true that, in that case, this court required a plaintiff who claimed that the administrative law judge had erroneously failed to find her obesity to be a severe impairment at Step 2 to show as well that her obesity imposed limitations on her ability to perform work-related functions. *Id*. at *4. Here, however, Dr. Jenner, who diagnosed the schizoaffective disorder, also found severe occupational problems, Record at 541, which is the type of information that was missing in *Ahearn*, and, while the question is a close one, is enough to meet the plaintiff's Step 2 burden.

Remand is necessary on this basis. *See generally Beach v. Astrue,* No. EDCV 05-1053 FFM, 2008 WL 5251784 (C.D.Cal. Dec. 15, 2008), at *2. It should be noted that the claim to be addressed on remand begins in April 2008, if the court upholds my recommendation with respect to the administrative law judge's conclusion with respect to substantial gainful activity.

### *4. Contacting Dr. Jenner*

The plaintiff also argue that "[t]his is the classic case for recontacting the physician rather than rushing to judgment[,]" and that, since the administrative law judge found Dr. Jenner's records "inadequate . . . to determine whether [Mr. Gregoire] was disabled," he was required to contact her to seek clarification by 20 C.F.R. § 404.1512(e). Itemized Statement at 11. But, that regulation is not written on a doctor-by-doctor basis. If it were, an administrative law judge would have to contact each and every medical professional whose report or evaluation he or she rejects, in whole or in part, thereby adding untold time and effort to most benefit applications.

---

abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. at 1124 (quoting Social Security Ruling 85-25).

The regulation speaks only to situations in which the administrative law judge does not reasonably feel that he or she has enough medical information to make a decision, specifically, that is, "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). The fact that the administrative law judge did not contact Dr. Jenner directly does not require remand.

### 5. *Failure to determine characteristics of past relevant work*

The plaintiff next seeks remand due to the administrative law judge's alleged failure to elicit from him "the necessary information to allow the vocational expert to offer accurate testimony regarding . . . past relevant work." Itemized Statement at 13-18. The burden of proof on this issue, which arises at Step 4 of the sequential evaluation process, remains with the claimant who was, as I have noted, represented at the hearing. When the vocational expert testified that she was "guess-timat[ing]" with respect to the characteristics of the plaintiff's past work, because "just a few of these jobs are described in the file," Record at 46, the plaintiff's representative should have offered the plaintiff's direct testimony about those jobs as he performed them or pointed out the information in the record on which the plaintiff now relies.

However, because this case will be remanded for consideration of the claims with an effective onset date of April 2008, it would be best if both the plaintiff's representative and the administrative law judge endeavor to create an adequate evidentiary record on this point.

Under these circumstances, it is not necessary to reach the plaintiff's additional argument based on an alleged failure to resolve any conflicts between the vocational expert's testimony

about the characteristics of the plaintiff's past work and the description of those jobs in the *Dictionary of Occupational Titles*. Itemized Statement at 18-19.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED** in part and **VACATED** in part. Specifically, I recommend that the commissioner's decision at Step 1 about the plaintiff's substantial gainful activity in 2007 and 2008 be affirmed and that the case be vacated and remanded for further consideration consistent with this opinion with respect to the period beginning after April 30, 2008.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of May, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge